62 So.2d 395

**CRIFASI et al. v. HOUSTON FIRE & CASUALTY INS. CO.**

**No. 40605.**

Dec. 15, 1952.

Sam J. D'Amico, Baton Rouge, for plaintiffs-appellants-appellees.

Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for defendant-appellant-appellee.

PONDER, Justice.

On consideration we have arrived at the conclusion that the trial judge has completely stated the case and disposed of the issues raised herein in the written reasons for judgment handed down by him. Therefore, we have adopted his written reasons as the opinion of this Court, which are as follows:

"This is a suit by the plaintiffs against the Houston Fire and Casualty Insurance Company for $3,000.00, together with a 25% penalty and a $1,000.00 attorney's fees, on a safe burglary policy issued by the defendant company to the plaintiffs doing business as the One Stop Market at 1915 Scenic Highway, in this city and parish.

"The plaintiffs' place of business was burglarized on or about December 26, 1949, and the plaintiffs allege that the burglars took, stole and carried away approximately $4,192.68 in cash money, and this suit is for the full amount of the policy or $3,000.00, plus the penalties and attorney's fees.

"The defendant takes the posititon first that there is no liability because the plaintiffs failed to keep accurate books and records from which the loss can be deter-

mined and second, if there is any liability, then the most that the loss could be is $907.03. This latter amount was tendered on the 3rd day of September, 1950, by the defendant to the plaintiffs without prejudice.

■■ "The policy contains a provision that 'unless the books and accounts are kept by the assured and the loss can be accurately determined therefrom by the company' the company shall not be liable for any loss or damage under the policy. At the beginning of the trial the defendant objected to the introduction of any evidence as to the amount of the loss except that which could be established by the books and records of the plaintiffs. The court ruled that this clause in the policy was binding on the plaintiffs and that the loss must be established by plaintiffs' books and records, which the court interpreted to include all the usual and ordinary records kept by retail stores, such as cash register tapes, ledgers, etc., and that parol evidence would be admissible only to explain and interpret the books, accounts and records. However, the court ruled further that this ruling was subject to the primary evidence rule which allows secondary evidence when the written evidence has been destroyed without fault of the assured.

"The alleged loss of $4,192.61 is made up of 14 items on an informal proof of loss submitted by the plaintiffs and offered in evidence as Exhibit P-1.

"An examination of this proof of loss shows that the first item is: '$850.00—Oranges sold during the week turned in Saturday evening by John Fonte.' The ninth item reads as follows: '$140.00—Charles Murray—sales for oranges Saturday.' These items allegedly represent money received from the sale of oranges by John Fonte and Charles Murray outside the plaintiffs' place of business, and turned over to Crifasi Brothers on the evening of December 24, 1949, and placed in the safe. There is absolutely nothing in plaintiffs' books and records to show that any amount of money was due by these parties or ever paid by them to Crifasi Brothers, nor is there any evidence that any such books or records were destroyed in the burglary which would establish the claim. The court, therefore, sustained the objection as to the evidence and consequently these items cannot be allowed.

"The second item is: '$400.00 in small tin box in reserve for cashing larger checks. As a rule I have $500.00, but loaned $100.00 to Ada Jarret, which she paid back $45.00.'

"The third item is: '$45.00—Ada paid back on her note above mentioned.'

"The fourth item is: '$150.00—In bills and currency for change for Monday not knowing they were to be closed.'

"The fifth item is: '$150.00—In bills and currency for change Tuesday.'

"The sixth item is: '$275.00—In bills and currency as extra change.'

"The seventh item is: '$300.00—Change to start Saturday's sales at register.'

"It will thus be seen that all of these items are for cash on hand. The books of the plaintiffs show cash on hand to be $579.59. The court believes that under the terms of the policy these figures must be accepted as correct. Furthermore, Allison Kolb, a CPA and attorney, who audited the books of the plaintiffs, concluded that this figure can to some degree be tied into the other records of the plaintiffs.

"The tenth item is: '$41.32—paid by employees for groceries bought,' and the fourteenth item is: '$40.00—in envelope for deposit.' These are both now admitted by the plaintiffs' bookkeeper, Mrs. Isabel Berea to have been entered erroneously.

"The item that has given the court the greatest concern is item No. 8 which reads: '$1,900.00—Register reading for Saturday's sales.' Mr. Ben Crifasi, one of the plaintiffs, testified that on the evening of December 24th he closed the business himself, and that in doing so he followed their usual practice of clearing the cash register, tearing off the cash register tape, and putting it along with the contents of the register into a cigar box which was placed in the safe. He testified that he did not remember exactly the cash register reading, but that it was around $1,900.00, and that the cash register tape which was placed in the cigar box with the money was apparently taken or destroyed by the burglars for it has never been found. He is not cor-

roborated by anyone as to this testimony except that Mr. Brocato, who is the shipping clerk and credit manager for the plaintiffs, testified that at approximately 6:00 p.m. he checked the cash register reading and that it was approximately $1,200.00, or better, that he made a sub-total of that amount and showed it to Mr. Peter Crifasi. This sub-total showing on the tape was offered in evidence as P–13 and reads in the amount of $1,249.95. Mrs. Berea, the plaintiffs' bookkeeper, testified that this was found near the safe about a week after the burglary. At the time Mr. Kolb made his audit no mention was made of it and they make no satisfactory explanation for not calling such an important matter to his attention.

"The defendant strongly contends that the claim of $1,900.00 is completely out of line and that contention is substantiated by Mr. Kolb, the accountant who made the check of the books and records of the plaintiffs. Mr. Kolb's audit showed that the summary of sales as reported by this establishment for the period from December 15, 1949, to December 30, 1949, indicated that the largest amount of sales on any day was $1,142.87, this being December 23, 1949. As a matter of fact, the plaintiffs concede that they never before had done a day's business which in any way approximated the claim of $1,900.00 on December 24, 1949. However, they point out this was the day before Christmas and that both Christmas Day and the following day were to be holidays. Mr. Kolb, in arriving at an

equitable amount to allow the plaintiffs for sales on December 24, 1949, suggested that the amount of sales for December 23rd could be used since this was the largest day that the plaintiffs had ever had previous to December 24th. He further concluded that this was a fair and equitable amount to allow them by analyzing in past the ratio of checks to cash on sales made by the plaintiffs. To do this he took the amount of deposits for 15 days and arrived at the fact that 69.23 per cent of the day's deposits were ordinarily checks. On the day in question there is no dispute that the amount of checks on hand were $628.78. If that accounts for 69.23 per cent of the sales we arrive at a figure of $907.06 as the total amount of sales on the day in question.

"Another factor which must be taken into consideration and which makes the task more difficult for the court, is that in addition to ringing up the cash retail sales on the cash register, the plaintiffs also rang up the credit sales and also the cash tickets of the wholesale department. Mr. Brocato, plaintiffs' credit manager, on this point testified as follows:

'Q—How do you determine the amount of cash taken in on one particular day?

'A—You have your total at the end of the day; you have your total, your final total on the register, and you have the charges which you have on the side of the register. You add those up. Then you deduct that amount from the total of the cash register. Now, we also have the wholesale depart-ment usually send up cash tickets to the cash register. That has to be adjusted.

'Q—Is that in order to separate it?

'A—In order to separate your retail cash money.'

"Mrs. Berea, the plaintiffs' bookkeeper, also testified that the cash register was used as an adding machine to keep track of the credit sales.

"Therefore, conceding that Mr. Crifasi's testimony is correct as to the approximate amount of the cash register reading at the close of business on Saturday, December 24, 1949, and this court certainly has no reason to question his positive testimony on that point, there is no way to tell what part of that total was made up of credit sales. In other words, the total on the cash register tape would include everything that has been rung up on the cash register, including the charges that had been made during December 24th. It is thus at once apparent that plaintiffs have failed to show with any degree of certainty the amount of their loss from cash sales on the day in question. It must be furthermore remembered that the burden of proof is upon them to establish this loss. Under such circumstances the court believes that the only fair and equitable way to calculate the sales on the day in question is to allow them the largest amount of sales on any previous day as Mr. Kolb did. This amount is $1,142.87 for December 23rd and when the checks totalling $678.78 are deducted it

leaves $464.09 cash. In view of the testimony of the Crifasi Brothers that this particular Saturday was the largest day they had ever had, and further in view of the fact that it was the Saturday before Christmas and practically all stores would be closed on Christmas Day, Sunday, and on the following day, Monday, it may well be that this amount is inadequate, however, the court knows of no better way to arrive at a figure. The court will, therefore, allow as Item No. 8 the sum of $464.09.

"Item No. 11 is: '$495.69—Average of previous sales on Saturdays.' Since the court has allowed the plaintiffs credit for the largest day's business, both wholesale and retail, as a basis for Item No. 8, this item is disallowed.

"Item No. 12 is: '$50.00—Benjamin Crifasi's previous week drawing account.' Mrs. Berea testified positively that it was her custom and practice on each week to take $50.00 as a drawing account for each of the Crifasi Brothers and that for the bookkeeping purposes a check was prepared payable to each of them, and to which was attached $50.00 in currency. To substantiate the plaintiffs produced and offered in evidence a check dated 12/17/49 and which is offered in evidence as P–14. The been substantiated and that it should be court is of the opinion that this item has allowed.

"Item No. 13 is: '$34.38—Cash clearance on salaries to be redeposited.' To substantiate this item the plaintiffs produced P–15, the deposit slip of the City National Bank, and also to which is attached an envelope in which the $34.38 is alleged to have been contained. Taking into consideration Mrs. Berea's testimony, the court is of the opinion that it has been substantiated and should be allowed."

The final item is for damage to plaintiffs' safe in the amount of $30.60. The policy covered this item and the court is of the opinion that it should be allowed.

The total, therefore, of the allowed items is $1,158.67.

■ "On the question of penalties and attorney's fees for the plaintiffs the statutory provisions on this point are found in Revised Statutes 22:658. That section provides that insurers of the type in question here shall pay the amount of any claim due an insured within 60 days after receipt of a satisfactory proof of loss and that failure to make the payment within the 60 day period shall make the insurer liable for penalties and interest if such failure is found to be arbitrary and capricious or without probable cause. In view of the lack of certainty of the plaintiffs' claim and the condition of their books and records, and of the serious disputes involved here, the court is of the opinion that the failure of the defendant to pay the amount which the court finds herein was not arbitrary, capricious or without probable cause, and hence, this court is of the opinion that the plaintiffs are not entitled to any penalty or attorney's fees.

"It Is Ordered, Adjudged and Decreed that there be judgment herein in favor of plaintiffs, Ben Crifasi and Peter Crifasi, d/b/a One Stop Market and against Houston Fire and Casualty Insurance Company in the full and true sum of One Thousand One Hundred Fifty-Eight and 67/100 ($1,158.67) Dollars, together with interest thereon at the rate of five percent (5%) per annum from date of judicial demand (December 26, 1950) until paid."

For the reasons assigned, the judgment appealed from is affirmed. Costs to be paid by the defendant.